Hannah Sullivan, as Receiver of the Estate of Timothy D. Sullivan, Deceased, Appellant, *v.* Mount Carmel Cemetery Association, Respondent.

**Cemetery associations — certificates of indebtedness issued under section 74 of Membership Corporations Law payable from proceeds of sales of lots — action at law to recover balance due not maintainable — action for an accounting only remedy — definite date in certificate for payment of balance — obligation may be enforced by courts but payment is restricted to method prescribed by statute.**

1. Certificates of indebtedness issued by a cemetery association pursuant to section 74 (now 97) of the Membership Corporations Law (Cons. Laws, ch. 35) are to be paid " from the proceeds of sales of the use of lots and plats." An action at law, therefore, to recover a balance due on such a certificate cannot be maintained. An action in equity for an accounting and for the *pro rata* application of moneys received from the sale of lots to payment of the amount unpaid is the only remedy.

2. Nor is this changed by the fact that in a certificate sued upon a definite date is fixed for payment of the balance unpaid. The certificate must be read in accordance with the authority which the corporation had to issue it. The fixing of a definite date for payment of the balance may be construed as a time up to which the directors may exercise a discretion in the application of the proceeds without interference from the courts. After that date the balance becomes due and may be enforced as an obligation but its payment is restricted to the methods prescribed by the statute.

*Sullivan* v. *Mount Carmel Cemetery Association,* 217 App. Div. 309, affirmed.

(Argued January 11, 1927; decided February 23, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 25, 1926, which affirmed an order of Special Term denying a motion, by plaintiff, for judgment on the pleadings.

*Abraham Benedict, Gustavus A. Rogers* and *Edith H. Kunen* for appellant. The defendant had power to make its certificates of indebtedness payable at a fixed date. (*American Exchange Natl. Bank* v. *Woodlawn Cemetery*, 194 N. Y. 116; Real Prop. Law, § 450, amd. by L. 1918, ch. 404; *Matter of Chauncey*, 191 App. Div. 359; *Matter of Norton*, 97 Misc. Rep. 289; *Bade* v. *Ferncliff Cemetery Assn.*, 91 Misc. Rep. 26; *Whittemore* v. *Woodlawn Cemetery*, 71 App. Div. 257; *Thacher* v. *Hope Cemetery Assn.*, 79 Hun, 222; 126 N. Y. 507; *Tyndall* v. *Pinelawn Cemetery*, 198 N. Y. 217; *Calif. Packing Corp.* v. *Kelly Storage, etc., Co.*, 228 N. Y. 49; *McGovern* v. *City of New York*, 234 N. Y. 377.) The view taken by the Appellate Division defeats the statutory plan and imposes terms neither authorized nor contemplated by the Legislature. (*Empire Engineering Co.* v. *Mack*, 217 N. Y. 83; *Warnock Uniform Co.* v. *Garifalos*, 224 N. Y. 522; *North Carolina R. Co.* v. *Story*, 268 U. S. 288; *Tyndall* v. *Pinelawn Cemetery*, 198 N. Y. 217.)

*Clinton T. Roe* for respondent. The respondent cemetery association had not the power to provide in its land purchase certificates a fixed date upon which the balance then remaining unpaid of the principal sums thereof should become due and payable. (*Matter of Chauncey*, 191 App. Div. 359; *Thacher* v. *Hope Cemetery Assn.*, 126 N. Y. 507; *Matter of Norton*, 97 Misc. Rep. 289.) The plaintiff may not pursue any course of action that would work adversely to the interests of the other holders of land purchase certificates. (*Whittemore* v. *Woodland Cemetery*, 71 App. Div. 257; *Guffanti* v. *National Surety*

*Co.,* 196 N. Y. 452; *Bauer* v. *Platt,* 72 Hun, 327; *Pfohl* v. *Simpson,* 74 N. Y. 137; *Illinois Surety Co.* v. *Mattone,* 138 App. Div. 173; *Board of Supervisors* v. *Deyo,* 77 N. Y. 219.)

CRANE, J. The plaintiff is the holder of the following certificate of indebtedness issued by the Mount Carmel Cemetery Association on the 16th day of October, 1918:

" Number 393 Amount $200,000

" CERTIFICATE OF INDEBTEDNESS

" of the

" MOUNT CARMEL CEMETERY ASSOCIATION

" Incorporated under the Laws of the State of New York

" This is to Certify that the Mount Carmel Cemetery Association, a corporation duly organized under and by virtue of the Laws of the State of New York, is indebted to Hannah Sullivan, as Receiver of the Estate of Timothy D. Sullivan, deceased, or assigns, in the sum of Two Hundred Thousand 00/000 Dollars, for value received, which sum the said Mount Carmel Cemetery Association hereby promises to pay on the first Monday in June, in the year nineteen hundred and twenty-five, at its office in the City of New York, on the presentation and surrender of this Certificate.

" This Certificate is one of a series of Certificates amounting in the aggregate to Three Million, one hundred and fifty-six thousand, eight hundred ($3,156,800) Dollars, all of like tenor and effect. The Mount Carmel Cemetery Association shall and will apply at least one-half, or fifty (50%) per cent of the proceeds of the sale and use of lots and plots semi-annually, or oftener at the option of the said Mount Carmel Cemetery Association, to the payment *pro rata* of all outstanding Certificates of Indebtedness, aggregating said amount of Three Million, one hundred and fifty-six thousand, eight hundred ($3,156,800) Dollars, until the whole amount of said indebtedness is paid; the unpaid balance of this Certificate

of indebtedness to be paid on the said first Monday of June, 1925, at the office of said Mount Carmel Cemetery Association, in the City of New York.

" The said Mount Carmel Cemetery Association may apply as much more than one-half, or fifty per cent of the proceeds of the sale and use of its lots and plots to the payment of its Certificates of Indebtedness as it may deem advisable and proper after the payment of the incidental expenses and liabilities of the said Mount Carmel Cemetery Association, and the amount necessary for the preservation, improvement and embellishment of the Cemetery grounds and the avenues and roads leading thereto.

" This Certificate of Indebtedness is transferable only on the books of the Mount Carmel Cemetery Association in person or by Attorney on surrender of this Certificate.

" This Certificate shall not become obligatory until it shall have been authenticated by the signature of the Registrar selected by the Mount Carmel Cemetery Association.

" IN WITNESS WHEREOF, the said Mount Carmel Cemetery Association has caused this Certificate of Indebtedness to be signed by its President and its Secretary, and its corporate seal to be hereto affixed at the City of New York on this 16th day of October A. D. 1918.

" MOUNT CARMEL CEMETERY ASSOCIATION
" By BEN BLUMENTHAL
" [CORPORATE SEAL] *President.*
" MAURICE B. BLUMENTHAL
*"Secretary."*

On June 15, 1925, the due date, only $69,500 had been paid, and there was due $130,500 for which this plaintiff has brought an action at law. There is included in the complaint a second cause of action upon another like certificate, but for the purposes of this opinion, only one need be mentioned.

The defendant answered setting up that the certificates held by the plaintiff represented part of land purchase certificates, and are for the unpaid balance of the purchase price of land acquired and to be used for cemetery purposes; that pursuant to the laws and statutes of the State of New York, the proceeds received from the sale of cemetery lots are to be applied to the payment and reduction of such certificates; and that the defendant was unauthorized by law to obligate itself to pay said amounts at a fixed date.

The plaintiff having moved for judgment on the pleadings, the motion was denied and the order of the Special Term has been affirmed by the Appellate Division. This not being a final order, the Appellate Division granted leave to appeal to this court, certifying the following question: "Is the plaintiff entitled to judgment in her favor upon the pleadings?" We may put this question in another form. Can the plaintiff maintain an action at law on this certificate, obtain a money judgment, and issue execution to collect it; or must she resort to an action in equity for an accounting and for the *pro rata* application of moneys received from the sale of lots to her certificates?

After a review of all our statutes applicable to cemetery corporations, I am of the opinion that an action in equity for an accounting and its incidental reliefs is the only remedy. Chapter 133 of the Laws of 1847 is the first act of the Legislature which we need refer to. It provided for the incorporation of cemetery associations, and gave them power to purchase land to be used exclusively for the burial of the dead, not to exceed two hundred acres. Authority was also given to hold personal property not exceeding five thousand dollars. Section 7 provided:

"All lots or plats of ground designated on the maps filed as aforesaid, and numbered as separate lots by the incorporation, shall be indivisible, but may be held and owned in undivided shares. One-half at least of the

proceeds of all sales of lots or plats shall be first appropriated to the payment of the purchase money of the lands acquired by the association, until the whole purchase money shall be paid, and the residue thereof to preserving, improving and embellishing the said cemetery grounds and the avenues, or roads leading thereto, and to defraying the incidental expenses of the cemetery establishment.  And after the payment of the purchase money and the debts contracted therefor, and for surveying and laying out the land, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery, and for incidental expenses and to no other purpose or object."

Section 10 reads:

" The cemetery lands and property of any association, formed pursuant to this act, shall be exempt from all public taxes, rates, and assessments; and shall not be liable to be sold on execution, or be applied in payment of debts, due from any individual proprietors."

This was followed by chapter 122 of the Laws of 1853, by adding to the act of 1847 the following section:

"Associations formed under this act may also agree, with the person or persons from whom cemetery lands shall be purchased, to pay for such lands, as the purchase price thereof, any specified share or portion, not exceeding one-half, the proceeds of all sales of lots or plots made from such lands; in which case the share or portion of such proceeds so agreed upon, not exceeding one-half thereof, shall be first appropriated and applied to the payment of the purchase money of the lands so acquired, and the residue thereof shall be appropriated to preserving, improving and embellishing the said cemetery grounds and the avenues or roads leading thereto, and to defraying the incidental expenses of the cemetery establishment. In all cases where cemetery lands shall be purchased and agreed to be paid for in the manner hereinbefore last provided, the prices for lots or plots, specified in the

by-laws, rules and regulations first adopted by any such association, shall not be changed without the written consent of a majority in interest of the persons from whom the cemetery lands were purchased, their heirs, representatives or assigns."

Then came chapter 163 of the Laws of 1860, giving authority to the cemetery associations to issue certificates of indebtedness. This was also by amendment of the act of 1847. " It shall be lawful," says section 1, " for the trustees   *   *   *   to fund any outstanding indebtedness, for lands purchased for cemetery purposes, or for moneys actually expended in preserving, improving and embellishing the cemetery grounds, and to provide for the payment of such funded debt, in the manner hereinafter provided."

Then follows:

" § 2. Whenever the trustees, by a vote of two-thirds of all the trustees elected, shall desire to fund such indebtedness, it shall be their duty to ascertain the amount of obligations outstanding for the purchase money of the lands acquired by the association, and the amount of obligations outstanding for preserving, improving and embellishing the cemetery grounds, and thereupon, with the consent of any creditor to whom such indebtedness, or any part thereof, may be due and owing, the said trustees shall have power to issue certificates for the amount thereof, in sums of one hundred dollars each, payable at such time, and drawing such interest as may be agreed upon, in satisfaction and discharge of such indebtedness, or such part thereof, but no certificate shall be issued for any fractional part of one hundred dollars, nor drawing any higher rate of interest than seven per cent per annum. The said certificates shall be sealed with the corporate seal of the association, and signed by the president and treasurer thereof. They shall be deemed personal property, and shall be transferable by delivery, unless otherwise provided on the face thereof,

and an exact and true account of the number and amount of the said certificates, the persons to whom issued, the time of maturity and the rate of interest, shall be accurately entered on the books of the association. * * *

" § 4. Nothing in this act contained shall be construed to create a lien upon lots or plats belonging to individual proprietors, within the cemetery limits, nor any other or greater liability against the association or trustees issuing said certificates, than may be necessary to enforce the faithful application of the proceeds of sales, in the redemption thereof, in the manner aforesaid."

I have copied the pertinent portions of these statutes in full, as they have been embodied and continued almost in the same phraseology in all subsequent enactments down to and including sections 70 and 74 of our present Membership Corporations Law (Cons. Laws, ch. 35). (In the revision of 1926, chapter 722, sections 70 and 74, became sections 87 and 97. My subsequent references will be to sections 70 and 74.) The only portion which has been dropped out has been that portion of section No. 4, which reads: " any other or greater liability against the association or trustees issuing said certificates, than may be necessary to enforce the faithful application of the proceeds of sales, in the redemption thereof, in the manner aforesaid." This clause, made applicable to stock by chapter 107, Laws of 1879, section 4, is continued in section 75 of our Membership Corporations Law, also applying only to stock.

The act of 1847 was again amended by chapter 245 of the Laws of 1874 in an immaterial part; and again by chapters 107 and 108 of the Laws of 1879. Chapter 107 authorized the change of certificates of indebtedness into certificates of stock, giving dividends on the stock payable out of surplus income instead of interest on the certificates of indebtedness. Section 4, above quoted from the Laws of 1860, was continued in substance as applicable to said certificates of stock. Chapter 108

combined in one section section 7 of chapter 133 of the Laws of 1847 and section 1 of chapter 122 of the Laws of 1853. This combination still continues in almost the identical words as section 70 of the Membership Corporations Law. This provision, therefore, is not new. It is the same as the act of 1847 with the provisions of 1853 added. It is still the law governing the disposition of proceeds received by cemetery associations from the sale of lots.

After the acts of 1879 came the General Laws of 1895, chapter 559, relating to membership corporations, including cemetery associations. Sections 50 and 54 made no changes in the parts we are considering, and were later continued in the Membership Corporations Law, as sections 70 and 74. However, in section 54, we find that the words " any other or greater liability against the association," etc., of section 4, chapter 163 of the Laws of 1860, have been dropped, so far as applicable to certificates, continuing, however, the provision that the certificates shall not be a lien upon any lot belonging to a lot owner.

The Consolidated Laws of 1909, chapter 40, sections 70 and 74, re-enact these provisions regarding the application of proceeds from the sale of lots, the agreement with purchasers and the certificates of indebtedness as they before existed, and as I have above quoted them from the earlier laws.

Under these statutes, how have the courts dealt with the indebtedness of cemetery associations? That the Legislature has not attempted to make any general revision or change in the cemetery law may be gathered from the fact that section 65, chapter 40 of the Laws of 1909 (Consolidated Laws) still continues the right of cemetery corporations to acquire land by condemnation, although it was decided as early as 1876 in *Matter of Deansville Cemetery Assn.* (66 N. Y. 569) that such provision was unconstitutional and void.

*Thacher* v. *Hope Cemetery Association* (126 N. Y. 507) related to the Statute of Limitations as applicable to certificates of indebtedness issued by the cemetery association. The certificate in that case contained an agreement on the part of the association that one-half of the receipts from the sale of lots should be applied exclusively to the payment of the $2,500. This court, however, had something to say regarding these certificates. The sole obligation was contained in the certificate, for the breach of which an action would lie at law if it were not for the statutes. Judge EARL says:

" It was obliged to apply the money so received semi-annually, and the instrument must be treated as to its legal effect as if it had been payable in semi-annual installments; and for default in the payment of any installment an action could at once have been brought to recover the amount due for such installment; and when all the installments became due, as they did more than ten years before the commencement of this action, then the entire amount specified in the certificate was due, and an action could then have been brought against the defendant to recover the whole amount thereof; and an ordinary action at law is the proper remedy in such a case.  *  *  *  We have thus far considered this certificate without reference to the statutes governing the defendant."

Referring to the laws up to and including chapter 163 of the Laws of 1860, it was there said that the certificate did not create a general obligation to pay, but only an obligation to pay out of the proceeds of the moneys received from the sales of lots. " If it never received any money from the sales of lots it could not be compelled to pay any upon the certificates."

*Seymour* v. *Spring Forest Cemetery Assn.* (144 N. Y. 333) related to bonds issued for the purchase price of cemetery lands. These also contained a provision for their payment out of the proceeds from the sale of lots.

This was held to be in conformity with the statutes, and binding on the corporation.

*American Exchange National Bank* v. *Woodlawn Cemetery* (194 N. Y. 116) related to certificates of stock, treated as certificates of indebtedness. Spurious certificates of stock had been negotiated for a loan, and the action was to make these an obligation of the association, or rather to recover damages for the loss occasioned by their issuance. This court said, after referring to the statutes:

" It is evident that the legislative scheme was twofold. It enabled such associations to acquire land and to provide for a future and conditional payment of the price, and it secured to the owners of burial plots the creation and the application of a fund for the perpetual preservation, improvement and embellishment of the grounds. In legal effect, the certificates issued by the defendant were promises to pay money; differing, essentially, from certificates of stock, which a stock corporation issues. * * * It was not within the corporate powers of such associations to obligate themselves absolutely with respect to the proceeds of sales, or otherwise than by the certificates of indebtedness of the statute. * * * They were under restrictions, which entered into the fundamental law of their being. * * * The powers of the corporation could not rise beyond the legislative source and the wise scheme of the legislature, for a restriction of the corporate liability, by limiting what the corporation might do, and for the maintenance of a fund for the benefit of lot owners, could not be defeated by acts in excess of powers conferred. * * * The question of the liabilities, which such associations may incur, is a very serious one and concerns the body of lot owners, for whose protection the legislative scheme was devised," etc.

It is true that the opinion referred to section 4 of chapter 163 of the Laws of 1860, containing the words that " nothing in this act contained shall be construed to create

* * * any other or greater liability against the association or trustees issuing said *certificates,* than may be necessary to enforce the faithful application of the proceeds."

Although these words, as applicable to certificates, have not been in the laws since 1895, I do not think they furnish the sole basis for the limitation upon the obligations created by these certificates of indebtedness. In view of our statements regarding the purpose of these cemetery corporations, the protection of lot owners and the continuance in the various acts of these provisions regarding the means of payment for lands purchased, it seems to me that these words were unnecessary to limit the liability; that the law has not been changed in this particular, and was not intended to be changed by reason of their omission after 1895.

In *Tyndall* v. *Pinelawn Cemetery* (198 N. Y. 217) it was decided that an action for an accounting upon the certificates of indebtedness there in suit was the proper remedy.

Reading section 70 and section 74 of the Membership Corporations Law in the light of their history, of the decisions and of the practice pertaining to the use of certificates of indebtedness by cemetery associations, I am forced to the conclusion that it was never intended that they should create an obligation for the payment of money absolutely at a definite date, upon which an action at law could be maintained and execution issued. Cemetery associations may be sued at law for their indebtedness, properly created. Contracts may be made for work, labor and services, or even for property, which may create a present indebtedness for which the corporation would be liable. Such was the case of *Johnson* v. *Ocean View Cemetery* (198 App. Div. 854). A judgment recovered on such claims may be collected by execution since section 450 of the Real Property Law (Cons. Laws,

ch. 50) was amended by the Laws of 1918, chapter 404. Where, however, certificates are issued pursuant to section 74 " with the consent of the creditor to whom any such indebtedness is owing," the certificates are to be paid " from the proceeds of sales of the use of lots and plats." That the certificates of indebtedness are something more than mere obligations to pay money absolutely and at a given time, and are of a different nature, appears also from those provisions which give the certificate holder the rights of a share holder, a right to vote at the meetings of the corporation. (Sect. 63; sect. 74.)

The certificate here in question on its face also indicates that it was intended to be paid out of the proceeds of the sale of lots. The fact that it has fixed a definite date for the payment of the balance due as of June 1, 1925, has created all the trouble. Such a statement is apparently inconsistent with the postponed payment from subsequent sales. However, the certificate must be read in accordance with the authority which the corporation had to issue it. Corporate acts or words cannot create an obligation contrary to the direct provision of a statute governing its operations. The certificate refers to the purchase of the land for cemetery purposes, and to the amount due as part of the purchase price. It obligates the Mount Carmel Cemetery Association to apply at least one-half of the proceeds of the sale and use of lots to the payment *pro rata* of all outstanding certificates of indebtedness until the whole amount is paid. The fixing of a definite date for the payment of the balance due may be construed as a time up to which the directors may exercise a discretion in the application of the proceeds without interference from the courts. After that date, the balance does become due; it may be enforced as an obligation by the courts; but its payment is restricted to the methods prescribed by the statute, which is the application of the proceeds of the sales of lots to the indebtedness. The courts can interfere after the due date; enforce the obli-

gation, enter judgment; but it will be a judgment for an accounting, or for the application of the proceeds in some appropriate manner.

For the reasons here expressed, the order below should be affirmed, with costs, and the question certified answered in the negative.

CARDOZO, Ch. J., POUND, ANDREWS and LEHMAN, JJ., concur; KELLOGG, J., absent.

Ordered accordingly.