JOHN J. FIRMES, Appellant, *v.* MOUNT HOPE CEMETERY ASSOCIATION et al., Respondents.

Cemetery associations — stocks and stockholders — dividends — trustees of rural cemetery association may distribute as dividends upon stock issued in 1888 entire surplus — complaint in action for declaratory judgment denying right to pay dividend out of surplus properly dismissed.

Under the provisions of chapter 107 of the Laws of 1879, as amended by chapter 267 of the Laws of 1894, the trustees of a rural cemetery association may distribute as dividends, upon stock issued in 1888, the entire surplus, or net receipts of the corporation, including receipts from the sale of lots, less current expenses, which may be defined as including those reasonably necessary for the improvement, embellishment and preservation of the cemetery. The complaint, therefore, in an action for a declaratory judgment that the entire surplus or net receipts of such an association must be applied to the preservation, improvement and embellishment of the cemetery grounds and denying the right of the defendant or its trustees to declare and pay dividends out of its surplus, was properly dismissed.

*Firmes* v. *Mount Hope Cemetery Assn.*, 222 App. Div. 656, affirmed.

(Argued April 5, 1928; decided May 1, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 11, 1927, unanimously affirming a judgment in favor of defendants entered upon an order of Special Term granting a motion by defendant for dismissal of the complaint in an action brought by a lot owner in Mount Hope Cemetery against the cemetery association and its directors and trustees. The complaint demands a declaratory judgment pursuant to section 473 of the Civil Practice Act adjudging that the entire surplus or net receipts of said association must be applied to the preservation, improvement and embellishment of the cemetery grounds and denying the right of said cemetery association to declare and pay dividends out of its surplus or net receipts to its stockholders.

*Austin T. Foster* for appellant.   The terms " surplus " and " net receipts, " as used in chapter 107, Laws of 1879, should be construed to exclude any portion of the proceeds of sale of cemetery lots.   (*People* v. *Ahearn,* 196 N. Y. 221; *Seligman* v. *Freidlander,* 199 N. Y. 373; *George* v. *Cypress Hill Cemetery Co.,* 32 App. Div. 281.)   The phrase, " their proportional part of the surplus or net receipts," should be construed as meaning the proportion of the surplus or net receipts, as above defined, agreed upon between the corporation and the holders of stock at the time of issuance.   (Laws of 1879, ch. 107.)

*J. M. Richardson Lyeth* for respondents.   Mount Hope Cemetery Association is authorized to pay to stockholders as dividends the entire surplus or net receipts of the corporation over and above current expenses.   (*Granara* v. *Italian Catholic Cemetery Assn.,* 218 Mass. 387; *Grobe* v. *Erie County Mutual Ins. Co.,* 39 App. Div. 183; 169 N. Y. 613; *Hinckley* v. *Schwarzschild, etc., Company,* 107 App. Div. 470.)   The defendant corporation may disburse as dividends its entire net receipts regardless of whether they are earnings or capital.   (*People* v. *Roberts,* 156 N. Y. 585.)   The defendant corporation may pay dividends even though it be classed as a membership corporation.   (*Bourland* v. *Springdale Cemetery Assn.,* 158 Ill. 458; *Granara* v. *Italian Catholic Cemetery Assn.,* 218 Mass. 387; *East Hill Cemetery Co.* v. *Thompson,* 53 Ind. App. 417; *Little Co.* v. *Woodward Avenue Cemetery Assn.,* 135 Mich. 248.)

ANDREWS, J.   We have here again to consider, as we considered in *Sullivan* v. *Mount Carmel Cemetery Association* (244 N. Y. 294), a series of statutes relating to rural cemetery associations.   We must endeavor to give a reasonable construction to somewhat conflicting provisions.   The precise question before us is whether upon stock issued in 1888 the trustees may declare dividends to be paid from moneys received from the sale of lots.

Under chapter 133 of the Laws of 1847 and chapter 122 of the Laws of 1853, rural cemetery associations might acquire the land needed for their purposes in two ways. They might agree with the vendors that one-half or more of the proceeds of all sales of lots should be appropriated to the payment of the purchase price until all is paid. Any balance, received before or after such payment, is to be used solely to improve the cemetery and for incidental expenses. Obviously the agreement with the vendors is to be shown by some written document. Obviously too, before a lot is or can be sold some indebtedness must be incurred also for improvements, or such indebtedness may arise thereafter, and be similarly evidenced. But apparently these classes of indebtedness are to be paid from the balance remaining after the portion applicable to the payment of the purchase price has been met. It is said in chapter 163 of the Laws of 1860 that the evidence of any such indebtedness may take the form of certificates. But these certificates, representing as they may two classes of debts, payable from different funds are to be kept in separate accounts and they are to be redeemed, the ones from the agreed half or more received from the sale of lots and the others from the balance.

The second method of purchasing land gives the vendor a speculative interest in the success of the association. The agreement may be that he is to receive in perpetuity a specific share, not exceeding half, of the gross receipts from the sale of all lots. The balance is to be used for improving the cemetery and for incidental expenses. However such an agreement is evidenced, it is not by such a certificate of indebtedness as is referred to in the act of 1860. So the act of 1853 is of no immediate concern.

In the case before us all certificates, if such existed, for the payment of the land purchased have been paid and redeemed. There remained certificates for debts incurred in the administration of the cemetery. Their form does not appear. We may assume that they bore

interest. Probably they provided for payment of the principal at some future time. Whether they did or not the defendant could not obligate itself to make payment at a fixed date. The only remedy of the certificate holder was an action in equity for an accounting and for the application to the payment thereof of the proceeds derived from the sale of lots. And not all the proceeds. Lot owners are also entitled to protection. The statute contemplates that such proceeds, so far. as reasonably and currently necessary, shall first be applied " to the improvement, embellishment and preservation of such cemetery and for incidental expenses," and only any balance to the payment of certificates. True it says that all receipts shall be applied to the purposes quoted " and to no other purpose or object." But the Legislature, recognizing the existence of certificates of indebtedness, recognizes that in some way they are to be paid. This is made clear by chapter .108 of the Laws of 1879, which adds to this phrase the words " unless expressly authorized by law."

The certificate holders, therefore, held an obligation of the defendant enforcible in equity. They were entitled to resort for payment to a certain fund. In this condition of affairs came chapter 107 of the Laws of 1879. It permitted the certificates to be changed into certificates of stock. The certificates were to be canceled. No interest was thereafter to be paid " but in lieu of interest the holders of said stock shall be entitled to claim and receive semi-annually a dividend for their proportional part of the surplus or net receipts of the said cemetery, over and above current expenses."

The expression " proportional part of the surplus " should be fairly interpreted to mean such part of the total dividend as each stockholder's shares bear to the total shares issued. We can find no other reasonable meaning for it. But in spite of the words " claim and receive " the trustees need not declare a dividend semi-

annually of the whole sum divisible, whatever that sum may be. We refer to the general power of directors over the subject of dividends and say they have discretion in the matter.

Then what of the expression " surplus or net receipts of the said cemetery, over and above current expenses?" The Legislature in a much later act (L. 1894, chap. 267) explains its meaning. Stockholders in lieu of interest, it says, may claim dividends " if, after deducting all current expenses incurred by said trustees from the total receipts from all sources of said cemetery, there shall remain a surplus." This act speaks of a dividend agreed upon when the stock was issued. Perhaps such an agreement may be necessary thereafter. It was not required when the stock we have to consider was issued.

The " total receipts from all sources " include receipts from the sale of lots. The " surplus " is stated to be those receipts less current expenses. We define " current expenses " as including those reasonably necessary for the improvement, embellishment and preservation of the cemetery.

If this is so, the decision reached below was right. It is admitted that the directors intend to distribute as dividends " the entire surplus or net receipts of the corporation, over and above current expenses." They may do so if they define " current expenses " as we have done. The answer, whose truth is admitted, says they do.

The judgment appealed from should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.