Cohn, J.
This is a representative action brought by plaintiff on his own behalf and on behalf of all other certificate holders of Series “ BB ” of defendant Elmont Cemetery, Inc. (hereinafter called Elmont) against Elmont, a cemetery corporation, its president and his wife, doing business as Goldberg and Glassir. It is charged that by the terms of the certificates defendant Elmont was under a trust obligation to devote 70% of the gross proceeds of the sale of its land to the payment of outstanding certificates; that despite such obligation Elmont entered into an agreement with selling agents in 1943 and in 1947, whereby these agents were to receive commissions in excess of 30% of the gross proceeds of land sales; and that the effect of these agreements was to divert a portion of the gross proceeds of the sale of land which Elmont was under obligation to apply to the retirement of the certificates. The relief prayed for is that defendant Elmont be enjoined from paying sales commissions to the Glassirs which would reduce the funds available for the payment of the certificates to less than 70% of the gross proceeds of the sale of land and to the extent that such invasion had occurred defendant Glassir and his wife be *546 required to account to Elmont and Elmont be directed to apply the money so restored towards the payment and cancellation of certificates.
Defendants admitted the issuance of the land purchase certificates and the making of the sales agency agreements but claimed that the agreements did not violate the provisions of the certificates and that the certificate holders were receiving payment in accordance with the terms thereof. The trial court granted an interlocutory judgment for plaintiffs for an accounting and for other relief. From that judgment this appeal is taken.
Elmont was organized as a cemetery corporation under the Membership Corporations Law in 1916. In that year it purchased land for which it paid no cash' but instead issued to the vendors purchase money certificates. These consisted of Series “ AA ”, “ A ”, “ B ” and “ BB ”, payable in that order. The face amount of the four series of certificates was $2,425,000, exclusive of interest. Prior to the year 1939, all certificates of Series “ AA ”, “ A ” and “ B ”, in the principal sum of $1,425,000, were paid off with interest. Redemption in numerical order of the Series “ BB ” thereupon began and by the end of 1947 all but 97 of the authorized 400 certificates, in the face value of $2,500 each, had been paid with interest. The amount due for principal and interest on the certificates outstanding was $700,825. The value of the lots and plots available for sale by Elmont at that time was over $3,500,000, thus providing a safe margin of assets available for the ultimate redemption of the remaining Series “ BB ” certificates. Indeed, it is not disputed that as of February 21, 1949, there were left unpaid only 50 of the “ BB ” certificates, of which defendant G-lassir and his wife had 18, so that as of that date there were unredeemed 32 “ BB ” certificates owned by plaintiff and others. In the normal course of events, according to the claim of defendants, which is undenied, these remaining certificates would be met in full with accumulated interest within two years.
The certificate reads as follows:
“ Series 1 BB ’ No....... $2,500.00
Purchase Money Certificate
Elmont Cemeteby, Ino.
“ This Is To Certify that the Elmont Cemetery, Inc., will pay to................ the sum of Two Thousand Five Hundred ($2,500) Dollars (being part of the purchase price of the said Corporation) with interest thereon at six (6%) per cent per
*547 annum, from July 14, 1916 to date when this certificate is paid off and cancelled. Said interest is payable together with the principal.
“ This certificate is one of four hundred (400) certificates of Two Thousand Five Hundred ($2,500) Dollars each, of like tenor and effect to be known as Series ‘ BB ’ certificates, and numbered from one (1) to four hundred (400), making the total issue One Million ($1,000,000) Dollars.
“ The Series ‘ BB ’ certificates are a lien on the land purchase fund, subject only to the liens of Series ‘ AA ’ and 1 A ’ and ‘ B ’ certificates aggregating not more than One Million, Four Hundred Twenty-five Thousand ($1,425,000) Dollars.
“ The land purchase fund from which Series ‘ AA ’ and ‘ A ’ and ‘ B ’ and ‘ BB ’ certificates shall be paid, is composed of Seventy per cent (70%) of the gross proceeds of the sale of land in said cemetery and the interest collected by said Elmont Cemetery, Inc., on the unpaid balance of the sale price of plots. Two-sevenths of the land purchase fund shall be set aside and used only for the payment of the principal of the underlying mortgages on the lands of Elmont Cemetery, Inc., and procuring releases of parts of the mortgaged premises. Five-sevenths of the land purchase fund shall be used, first to pay the Series ‘ AA ’ and 1 A ’ and ‘ B ’ certificates; and as soon as all of said Series 6 AA ’ and ‘ A ’ and ‘ B ’ certificates shall have been paid, then Series ‘ BB ’ certificates shall be paid and cancelled out of said fund.
“ Whenever the land purchase fund shall have accumulated in the Treasury of the Elmont Cemetery, Inc., after the payment of the Series ‘ AA ’ and 1 A ’ and 6 B ’ certificates as herein provided, to the amount of Five Thousand ($5,000) Dollars, such fund shall he used to cancel Series ‘ BB ’ certificates which shall be paid and cancelled in their numerical order beginning with Number 1, with the accumulated interest thereon.
“ Elmont Cemetery, Inc., is in nowise indebted to the holder of this certificate, hut acts merely as the collector and depository of the land purchase fund herein described with such liabilities as pertain to the proper discharge of the trust reposed in it by the holder thereof.”
The principal of the underlying mortgages on the lands of Elmont has all been liquidated by applying two sevenths of the land purchase fund for that purpose. What thereafter becomes of the two sevenths of the land purchase fund reserved for payment of the principal of the underlying mortgages is *548 one of the issues in the case. Plaintiffs say that such sum should have been applied to the redemption of the outstanding “ BB ” certificates. Defendants contend that this two sevenths should be applied by the corporation to preserve, improve and embellish the cemetery and to defray its expenses and discharge its liabilities.
From the language of the certificate above quoted it appears that the holder is entitled to only 50% of the gross proceeds of the sales of lots and plots. Nowhere is it stated in the certificate that its holder is to have applied to redeem outstanding certificates any more than 5/7 of the land purchase fund. In the certificate there is no declaration that after the mortgages have been paid off the entire land purchase fund is to be used to redeem the certificates or that the 20% no longer needed for the redemption of the mortgages shall be used for that purpose. If such were the intention it would have been expressed in so many words on the face of the certificate.
Section 87 of the Membership Corporations Law by its terms forbids a cemetery corporation from entering into a contract to pay more than 50% of its proceeds to vendors of land. The latter half of that section specifically provides that “ Such corporation may agree with a person from whom any lands are purchased for a cemetery, to pay therefor a specified share not exceeding one-half of the proceeds of sales of lots therein or the use thereof, and such share shall be applied to the payment of such purchase price, and the remainder to the preservation, improvement and embellishment of the cemetery, and the expenses and liabilities of the corporation.”
Plaintiffs maintain that the certificates issued by Elmont are in reality certificates of indebtedness issued for purchase money of land and are accordingly governed by the language of section 97 of the Membership Corporations Law. In our view the provisions of section 97 have no application to the certificates issued here. Plaintiffs’ certificates are, as the name under which they have been issued implies — purchase-money certificates. They are not certificates of indebtedness and were not so designated. They were not issued as a result of the funding of a debt nor do they evidence any debt as between the corporation, and the certificate holder. Moreover, these certificates bear no maturity dates as would be required if they were certificates of indebtedness (Membership Corporations Law, § 97). The very language of the certificates shows they are not certificates of indebtedness as they declare “ Elmont Cemetery, Inc., is in nowise *549 indebted to the holder of this certificate, but acts merely as the collector and depository of the land purchase fund
Furthermore, the law requires that the amount to be paid to certificate holders shall be calculated on net proceeds and not on gross proceeds. This court, in Reese v. Pinelawn Cemetery (243 App. Div. 165) held that despite the use of the term “ gross proceeds ” in a certificate such as this, the statute required that only net proceeds should be applied to payment of certificate holders. Under such a construction the certificate holders here were actually receiving more than 70% of the proceeds. In the Eeese case this court, in an opinion by Glennon, J., interpreting the term “ gross proceeds of sale”, said (p. 170): “ While the certificate provides that the holder is entitled to an interest in a certain number of shares of one-half the gross proceeds of sale, still we cannot overlook the wording of the statute which provides, in effect, that not more than one-half of the proceeds of sales shall be applied to payment of the purchase price, whereas the remainder is to be used for the preservation, improvement and embellishment of the cemetery.” (See, also, Seymour v. Spring Forest Cemetery Assn., 144 N. Y. 333; Firmes v. Mount Hope Cemetery Assn., 248 N. Y. 152, 156.)
In any event, as the terms of the certificate coupled with the provisions of section 87 of the Membership Corporations Law require that only 50% of the proceeds of the sale of lots be applied to the payment of certificates, plaintiffs have no cause for complaint, for the time to pay in numerical order certificates outstanding at the time of the commencement of this action had not yet arrived. Indeed, in some instances it appears that there has been a prepayment. Two accountants who testified at the trial showed that from 1930 to the end of 1947 certificate holders actually had applied to the redemption of their certificates more than 50% of the gross proceeds of the sale of land; that down to December 31, 1947, they had received the sum of over $200,000, in excesseof 70% of the net proceeds; and that all these payments were far in excess of 50% of the gross.
Plaintiffs have failed to establish a cause of action calling for an accounting. All payments to certificate holders have been made in accordance with the terms of the certificates and in accordance with law. The judgment should be reversed and the complaint dismissed, with costs.
Glennon and Shientag, JJ., concur; Peck, P. J., and Callahan, J., dissent and vote to affirm.
Judgment reversed and the complaint dismissed, with costs, Settle order on notice.