MARIAN K. KEITH, Plaintiff, *v.* MAPLE GROVE CEMETERY ASSOCIATION et al., Defendants.

Supreme Court, Special Term, New York County, June 9, 1955.

*Arad Riggs* and *Joseph R. Shaughnessy* for plaintiff.

*Frank Marcellino* and *Arthur H. Amon* for Maple Grove Cemetery Association, defendant.

*Jacob K. Javits, Attorney-General* (*Abe Wagman* of counsel), for State Cemetery Board, defendant.

ISIDOR WASSERVOGEL, Special Referee. Plaintiff, a holder of land certificates issued by the defendant Association, seeks a declaratory judgment determining that the Association is required to distribute to its land-certificate holders the proceeds of a condemnation award and 50% of the proceeds from sales of lots for burial purposes, without deduction of maintenance funds. In the alternative, plaintiff seeks a judgment declaring section 87 of the Membership Corporations Law to be unconstitutional.

The material facts are not in dispute. The defendant Maple Grove Cemetery Association (hereinafter referred to as the " Association ") is a membership corporation organized in 1875, under the Rural Cemetery Act of the State of New York (L. 1847, ch. 133). In about June, and July, 1875, the Association acquired approximately seventy-five acres of land in Kew Gardens, Queens County, New York, from one Mary A. Webb for the operation of a cemetery. By the terms of the contract between the grantor and the Association, it was provided that the latter pay to Mary A. Webb or her assigns " one-half of the proceeds of all sales of lots and plots made from said lands." Pursuant to such contract, the proceeds of sales of land were divided into 1500 equal parts, evidenced by certificates issued by the Association. Plaintiff, as an assignee of Mary A. Webb, is the owner of sixty-five of such " land certificates " and, accordingly, is entitled to 65/1500 of the proceeds of sales of land payable to certificate holders.

It is conceded that all payments required to be made to land-certificate holders pursuant to the Webb contract have been duly made by the Association up to September 1, 1949. On and after September 1, 1949, the Association, by virtue of an amendment of section 87 of the Membership Corporations Law

(L. 1949, ch. 533, eff. Sept. 1, 1949), deducted from the proceeds of sales of the Webb land 10% thereof for a permanent maintenance fund and 15% thereof for a current maintenance fund. One half of the balance then remaining was paid by the Association to its certificate holders, including 65/1500 thereof to the plaintiff herein.

On or about December 28, 1951, the Association received a condemnation award of $960,643.42 from the City of New York for cemetery land it had acquired in connection with the building of the Van Wyck Expressway Extension. The Association's expenses in the condemnation proceeding amounted to $65,814.25, leaving a balance of $924,829.17 as the net proceeds of the award. Plaintiff contends that this *entire* balance is payable to the certificate holders and further contends that the Association is required to make payment to such certificate holders of 50% of the proceeds of the sale of lots and plots since September 1, 1949, without deduction for any maintenance funds, regardless of the provisions of section 87 of the Membership Corporations Law, which, since September 1, 1949, as the Association contends, requires and authorizes such withholdings. Plaintiff asserts that if such deductions are made, the amendment to section 87 is unconstitutional in that the provisions thereof impair the contract between plaintiff and the Association. The Association and the defendant Cemetery Board of the State of New York (hereinafter referred to as the "Board") contend, however, that the condemnation award must be treated as a sale of land for burial purposes and, like such sales, on and after September 1, 1949, any payments made to land certificate holders cannot exceed 50% of the amount remaining *after deducting therefrom the expenses of the condemnation proceeding and the transfer of 10% of the proceeds to the permanent maintenance fund and 15% to the current maintenance fund* in accordance with the provisions of subdivision 2 of section 87 of the Membership Corporations Law.

Prior to its amendment in 1949, section 87 of the Membership Corporations Law provided as follows: "Such corporation may agree with a person from whom any lands are purchased for a cemetery, to pay therefor a specified share not exceeding one-half of the proceeds of sales of lots therein or the use thereof, and such share shall be applied to the payment of such purchase-price, and the remainder to the preservation, improvement and embellishment of the cemetery, and the expenses and liabilities of the corporation; in such case the prices of lots or the use thereof in force when such purchase was made, shall not be

changed, while the purchase-price remains unpaid, without the written consent of a majority in interest of the persons from whom the lands were purchased or their legal representatives."

In 1949, after an investigation by the Attorney-General of the State of New York into the activities of cemetery operators organized as purported nonprofit corporations, the Legislature enacted chapter 533 of the Laws of 1949, which, in effect, " overhauled article 9 of the Membership Corporations Law so as to subject cemetery corporations to rigid regulation." (White on New York Corporations [12 ed.], vol. 5, p. 241.)

The legislative intent is clearly set forth in the first section of chapter 533, which provides: " The people of this state have a vital interest in the establishment, maintenance and preservation of burial grounds and the proper operation of the corporations which own and manage the same. It is hereby declared that unhealthful, unfair, unjust, destructive, demoralizing and uneconomic practices have been and are now being carried on in the maintenance and operation of cemeteries. *To protect the well-being of our citizens, to promote the public welfare and to prevent cemeteries from falling into disrepair and dilapidation and becoming a burden upon the community, and in furtherance of the public policy of this state* that cemeteries shall be conducted on a non-profit basis for the mutual benefit of plot owners therein, the following provisions are enacted *in the exercise of the police power of the state.*" (Italics supplied.)

To achieve these declared purposes, the Legislature extensively revised article 9 of the Membership Corporations Law and other relevant statutes. It also caused a Cemetery Board to be established, which board was composed of the Secretary of State, the State Commissioner of Health and the Attorney-General, who were charged with the duties of administering the provisions of the new law. Likewise, declaring it to be the duty of every cemetery corporation to " maintain and preserve the cemetery, including all lots, plots and parts thereof ", the Legislature enacted a new section, section 86-a, to the Membership Corporations Law. This provision requires a cemetery corporation to deposit " not less than ten per centum of the gross proceeds " of sales into a permanent maintenance fund. These moneys are to be kept and invested as a trust fund and the income therefrom is to be used solely for the maintenance and preservation of the cemetery grounds. The principal of such trust is required to be kept inviolate except on order of the Supreme Court. An additional 15% of the proceeds of sales is required to be deposited by cemetery corporations into a current

maintenance fund for the ordinary and necessary expenses of the care and maintenance of the cemetery.

Section 87 of the Membership Corporations Law was also amended at this time with respect to payments to land-share certificate holders and to holders of certificates of indebtedness. Insofar as it is applicable here, the amended section now provides: " 1. At least one-half of the proceeds of sales of lots or the use thereof *remaining after the deductions for the portion thereof required to be deposited in the permanent maintenance fund and current maintenance fund together with the expenses of sales* shall be applied by a cemetery corporation to the payment of the purchase-price of the real property acquired by it. \* \* \* 2. Where a corporation has agreed with a person from whom any such lands were purchased to pay therefor a specified share not exceeding one-half of the proceeds of sales of lots therein or the use thereof, such corporation may continue to make payments as so agreed, *provided however that there be first deducted from said proceeds of sales the amount required to be deposited in the permanent maintenance fund and current maintenance fund as aforesaid together with the expenses of sale.* \* \* \* 3. No cemetery corporation, in purchasing real property hereafter, shall pay or agree to pay more than the fair and reasonable market value thereof. The terms of the purchase, including the price to be paid and the method of payment, shall be subject, upon notice to the cemetery board, to approval by the supreme court ".

In the opinion of the court, the language of the amended statutes is without ambiguity. The Legislature, in order to assure sufficient maintenance funds for present and future use, has clearly stated that the percentages to be paid to holders of certificates of indebtedness and land-share certificates shall be computed *on the net proceeds remaining after the deduction of the sales expenses and the 10% and 15% required for deposit into the permanent and current maintenance funds.* A comparison of the language of section 87 prior to the 1949 amendment with the language of the section as thereafter amended makes it unquestionable that the computation of the certificate holders' 50% interest in the proceeds of a sale of land was changed by the legislative edict. The provision of subdivision 2 of section 87 that " there be first deducted from said proceeds of sales " would otherwise be meaningless. As above noted, the newly enacted section 86-a clearly sets forth the requirement that there be paid to the permanent maintenance fund not less than 10% of the proceeds of the sale and that there be paid into

the current maintenance fund not less than 15% of the proceeds of sale. Subdivision 2 of section 87 then clearly sets forth the manner of computing the disposition of the proceeds of sales of lots and plots so as to provide for the maintenance fund payments required by the foregoing section. If it were intended, as plaintiff contends, that the payments to the permanent and current maintenance funds were to be made by a cemetery corporation out of the balance remaining to it after paying a full 50% of the proceeds of sales to certificate holders, the language set forth in the foregoing sections would have been unnecessary. It would have been a simple matter for the Legislature to have provided for payment to the permanent and current maintenance funds out of that part of the proceeds of sale remaining to the cemetery corporation by omitting the phrase "provided however that there be *first* deducted from the said proceeds of sales". The language used in subdivision 2 of section 87, however, clearly establishes that the intention of the Legislature is contrary to the interpretation placed upon it by plaintiff. (See *Reese* v. *Pinelawn Cemetery*, 243 App. Div. 165, and *Jackson* v. *Elmont Cemetery*, 275 App. Div. 544, 548–549.) Upon the evidence before me, therefore, I hold that in order to give effect to the legislative intent, as expressed in the above-stated amendments to the Membership Corporations Law, plaintiff's prayer for relief that the Association pay 50% of the proceeds of sale to certificate holders without first deducting the amounts payable to the maintenance funds must be denied as contrary to the relevant provisions thereof.

Plaintiff argues that unless her interpretation of section 87 be adopted, it must be found by the court that this law is unconstitutional in that it impairs the obligations of her contract with the Association and deprives her of property without due process of law. It is to be noted that, at best, under law established prior to the 1949 amendment (*Reese* v. *Pinelawn Cemetery*, *supra*), plaintiff is entitled to share only in the *net* proceeds rather than the *gross* proceeds of sales of cemetery lands. Nevertheless, even if it be assumed that section 87 impairs plaintiff's contract and deprives her of property, long-standing and basic constitutional principles of law relating to the exercise of the police power of the State remove all merit from such argument. It is a deeply-rooted and firmly-established principle that neither property rights nor contract rights are absolute. Both must give way to a proper exercise of the police power of the State. It is equally fundamental that the proper exercise of such police power is not rendered invalid merely because it

impairs or nullifies contracts or other rights between individuals. The Fourteenth Amendment to our Constitution was not intended to and does not strip States of the power to exert their lawful police authority (*Manigault* v. *Springs,* 199 U. S. 473, 480; *East New York Sav. Bank* v. *Hahn,* 326 U. S. 230, 231–233; *Queenside Hills Co.* v. *Saxl,* 328 U. S. 80, 83; *Black Riv. Regulating Dist.* v. *Adirondack League Club,* 307 N. Y. 475, 489; *Matter of Matson,* 293 N. Y. 476, 482; *Chamberlain* v. *Andrews,* 271 N. Y. 1, 14, affd. 299 U. S. 515).

It is significant that chapter 533 of the Laws of 1949, which added section 86-a and amended section 87 of the Membership Corporations Law, was expressly stated to be an exercise of the police power of the State and the introductory section clearly enunciates the basis for this legislative enactment (*supra*). The complaint does not allege, nor can it seriously be claimed, that the legislative declaration was simply an arbitrary and capricious guise for interfering with plaintiff's rights or that the measures adopted by the lawmakers were not reasonably calculated to bring about the stated legislative purposes. The Legislature was justified in exercising the sovereign right of the State of New York in order to promote the welfare of the People of the State and, in so doing, it had a wide discretion in formulating the means which it would adopt to achieve this end. In the absence of any proof that such was not a proper exercise of the police power of the State, this court may not interfere with the legislative promulgation (*People* v. *Schweinler Press,* 214 N. Y. 395, 406; *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 469; *Matter of Matson, supra,* pp. 482–483). In the opinion of the court, there can be no question that the remedial legislation of 1949 is more than appropriate, reasonable and well calculated to meet and accomplish the purposes enunciated by the Legislature in the preamble to the amendments. The inescapable conclusion, therefore, that this was a wholly proper exercise of police power completely disposes of plaintiff's contentions that the statute violates the due process and/or contract clauses of the constitutions of the United States and the State of New York.

Contrary to plaintiff's contention, equitable principles require that the condemnation award be deemed substituted for the proceeds of the sale of land covered by the Webb contract. All grants of land, with few exceptions not applicable here, are held subject to the exercise of the sovereign power of the State and the right of the State to authorize condemnation must be deemed an inherent condition of every land contract (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 435). As a result of the

condemnation proceedings, the land acquired by the City of New York can no longer be devoted to cemetery purposes, notwithstanding the terms of the contract between the grantor and the Association. It is a well-settled rule that a court of equity will grant relief when there is a breach of a condition arising out of the exercise of sovereign power. Under such circumstances, in order to apportion damages on an equitable basis, the fund received as an award necessarily takes the place of the land and such rights as exist with respect to the proceeds of the sale of cemetery lots and plots included in such land continue in the substituted fund (*Whittemore* v. *Woodlawn Cemetery*, 71 App. Div. 257, 264–265). Applying the foregoing equitable principles to this action, the land-certificate holders are entitled to 50% of the gross condemnation award up to the enactment of section 86 and the amendment of section 87 of the Membership Corporations Law by chapter 533 of the Laws of 1949 (*supra*). On and after September 1, 1949, the 10% and 15% deductions for the permanent and current maintenance funds respectively must necessarily be made *before* computing the 50% payable to certificate holders. Computed in accordance with this formula, plaintiff became entitled to $15,028.45 out of the condemnation award. Inasmuch as plaintiff has conceded payment to her of a sum in excess of this amount, there is nothing now due her.

Judgment, accordingly, is rendered in favor of defendants declaring section 87 of the Membership Corporations Law to be wholly valid and constitutional. Plaintiff's complaint, in all other respects, is dismissed upon the merits. No costs are awarded.

Submit decree within ten days on three days' notice.

The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.