Froessel, J.
(dissenting). We disagree with the majority on both the issues of statutory construction and the constitutionality of the statute as construed by them.
More than a century ago (L. 1853, ch. 122), the Legislature expressly authorized an owner of real property to contract for its sale to a cemetery corporation upon the latter’s agreement to pay, instead of a fixed price, any specified portion “ not exceeding one-half, the proceeds of all sales of lots or plots made from such lands ’ ’; said portion ‘ ‘ shall be first appropriated and applied to the payment of the purchase money of the lands so acquired, and the residue thereof shall be appropriated to preserving, improving and embellishing the said cemetery grounds and * * * to defraying the incidental expenses of the cemetery establishment”. In substantially the same language, this statute became section 70, and later section 87, of the Membership Corporations Law and continued so until 1949.
*412 On November 22, 1910 appellant, in full compliance with this old statute, entered into such an agreement with the defendant cemetery corporation, and thereupon conveyed to it certain real property. The terms of this agreement were honored by the parties for nearly half a century and until the defendant Cemetery Board notified the cemetery corporation that continued payments in accordance with the agreement would be “ illegal and improper ”,
As the result of an investigation of cemetery corporations by the Attorney-General, and his Report to the Governor dated February 11, 1949 (N. Y. Legis. Doc., 1949, No. 7), the Legislature amended article IX of the Membership Corporations Law-dealing with private cemetery corporations (i.e., other than religious and municipal corporations), so as to subject them to stricter regulation. One of the chief abuses sought to be remedied was the failure of the cemetery corporations to apply a sufficient amount of the funds retained from the sales of plots to the care and maintenance of their cemeteries. To this end, one of the ‘ ‘ key elements ’ ’ of the recommended legislation was described in said report as follows: “ A cemetery corporation would be required to maintain its burial grounds in good condition, and in order to do so would also be required to establish a permanent maintenance fund and a current maintenance fund. At the time of making a sale of burial space, at least 10 per cent of the gross proceeds would have to be put in the permanent maintenance fund and an additional 15 per cent in the current maintenance fund.” According^, new section 86-a requires every cemetery corporation to maintain (1) a “ permanent maintenance fund” and (2) a “current maintenance fund”. When an individual plot is sold, the corporation must deposit not less than 10% of the gross proceeds of the sale into the permanent fund and an additional 15% into the current fund. Present subdivision 2 of section 87, the construction and constitutionality of which are the subject of this action, provides:
‘1 Where a corporation has agreed with a person from whom any such lands were purchased to pay therefor a specified share not exceeding one-half of the proceeds of sales of lots * * *, such corporation may continue to make payments as so agreed, provided however that there be first deducted from said pro *413 ceeds of sales the amount required to be deposited in the permanent maintenance fund and current maintenance fund as aforesaid together with the expenses of sale. The balance of such proceeds shall continue to be applied by the corporation to the preservation, improvement and embellishment of the cemetery, and the expenses and liabilities of the corporation.” (Emphasis supplied.)
The defendant Cemetery Board contends that the statute requires defendant to deduct 25% from the proceeds of the sale of each plot, and then pay to plaintiff “ one-half of the net amount remaining after the deductions ” (emphasis supplied). In other words, the payment to plaintiff on the resale' of an individual plot was to be reduced by 25%.
Plaintiff agrees that 25% must first be deducted for deposit into the maintenance funds, but argues that it is then entitled to one half the original sales price, in accordance with its agreement, and not simply one half of the balance remaining. It recognizes, of course, that the expenses of sale are to be deducted from the gross proceeds before computing the 50% share due it (Reese v. Pinelawn Cemetery, 243 App. Div. 165; Jackson v. Elmont Cemetery, 275 App. Div. 544, affd. 300 N. Y. 526). It further contends that if the board’s interpretation is correct, the statute would be unconstitutional on two counts: (1) it would impair the obligation of its contract with defendant, in violation of section 10 of article I of the United States Constitution and section 15 of article I of the State Constitution, and (2) it would bear no reasonable relation to the evils sought to be rectified and hence would deprive plaintiff of substantive due process (U. S. Const., 14th Arndt.; N. Y. Const., art. I, § 6).
Subdivision 1 of section 87 now clearly provides that at least one half of the proceeds of sales of lots remaining “ after the deductions ” for the permanent and current maintenance funds and the sale expenses ‘ ‘ shall be applied ’ ’ to the payment ‘ ‘ of the purchase-price of the real property acquired ”, "Where there is an agreement, however, subdivision 2 applies. It provides that where a cemetery corporation has agreed to pay “ a specified share not exceeding one-half of the proceeds of sales of lots”, such corporation “may continue to make payments as so agreed ”, to wit, “ not exceeding one-half of the proceeds *414 of sales of lots ” (emphasis supplied). It does not qualify this language with the words “ after the deductions ” for maintenance funds and sale expenses as is done in subdivision 1. The only condition subdivision 2 imposes is ‘ ‘ that there be first deducted from said proceeds of sale ” the 25% for the maintenance funds and the sale expenses. In other words, maintenance funds are to be in the nature of a first lien on the proceeds; otherwise the agreement of the parties is unaffected, for the statute expressly provides that a cemetery corporation ‘ ‘ may continue to make payments as so agreed ”, i.e., from “ the proceeds of sales of lots ”, and the deduction for the maintenance funds are also made “ from said proceeds of sales ” (emphasis supplied). To put it still otherwise, under the former section 87 the cemetery corporation was authorized to pay not more than one half of the sales proceeds to the seller, but the remainder had to be retained for maintenance and general corporate expenses. Because it was found that some cemetery corporations did not set aside enough for maintenance but rather consumed much of this remainder in corporate expenses, the Legislature mandated the 10% and 15% maintenance funds — to be set aside first — but permitted continuance of the payment of not exceeding half the sale proceeds to the sellers “ as so agreed ”; it then permitted the cemetery corporation to retain the remainder for maintenance and corporate expenses. Such, it seems to us, is the very plain meaning of present section 87, and as so construed it has a reasonable relation to the evils sought to be rectified, and impairs the obligation of no contract.
To construe the statute as does the majority would in our opinion render it clearly unconstitutional. Reducing plaintiff’s contractual share in the sales proceeds from 50% of 100% to 50% of 75% is pure confiscation; it has no relation to the evil sought to be cured and is, therefore, not a proper exercise of the police power. If the State could take 25% of a seller’s contract right, why not 50% or even 100% Í (See, in this connection, Membership Corporations Law, § 86-a, subd. 4, which authorizes the Supreme Court to increase the 25% maintenance funds without notice to the seller of the land.) The distinction between rights under a contract and the remedies for its enforcement must be kept in mind (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398). We of course recognize that the police *415 power is broad, but it has its limitations. In the last-cited case, in determining whether a State statute unconstitutionally impaired the obligations of a contract, the general test was said to be “ whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.” (p. 438; emphasis supplied.) In order to conform with due process, the statute, as applied, must also meet this ‘ ‘ reasonable relations ” test, for, as this court noted in Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 541): “ due process demands that a law * * * be reasonably related and applied to some actual and manifest evil” (emphasis supplied).
The amount to be paid to the original transferor of cemetery land would appear to bear no reasonable relation to the evils sought to be corrected by the remedial legislation in question. As noted, the principal evil sought to be remedied was the misuse of funds by the cemetery corporations, including their failure to apply a sufficient portion of the 50% of the sales proceeds retained towards preserving and maintaining the cemetery. The Legislature sought to correct the latter abuse by requiring an initial 25% deduction to be deposited into the two maintenance funds. Once this deduction is made, there would appear to be no further policy to be served by limiting plaintiff’s share to 50% of this reduced amount, rather than 50% of the original amount, as provided for in the agreement.
The statute does not expressly purport to affect the amount due the original transferor under existing agreements. Unlike subdivision 1 of present section 87, subdivision 2 in no way implies that the 50% share due under existing agreements is to be measured by the reduced amount. Under former section 87, which expressly authorized contracts of the type here before us, it was provided that the remaining 50% be applied to “ preserving, improving and embellishing the cemetery grounds and the avenues and roads leading thereto, and to defraying its expenses and discharging its liabilities ” (see American Exch. Nat. Bank v. Woodlawn Cemetery, 194 N. Y. 116, 124). Under present section 87, that provision remains virtually unchanged, except that one half of the 50% retained by the corporation is specifically earmarked for the cemetery’s permanent and current maintenance funds. These funds are designed- to insure an effective preservation program; the directors are now prevented *416 from diverting them to other purposes at the expense of the suitable maintenance of the cemetery grounds, and for that reason they are made a first lien on the proceeds of sale.
As we said in Saltser & Weinsier v. McGoldrick (295 N. Y. 499, 509): “We know that- — -‘ A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score. ’ (United States v. Jin Fuey Moy, 241 U. S. 394, 401; Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 267.) We are also aware that legislation which impairs vested rights is unconstitutional. (Germania Savings Bank v. Suspension Bridge, 159 N. Y. 362, 368-369; Matter of Pell, 171 N. Y. 48, 52-53.) ”
The judgment appealed from should be reversed, with costs, and the matter remitted to Special Term with directions to grant judgment to plaintiff.
Judges Dye, Fuld and Burke concur with Chief Judge Desmond ; Judge Froessel dissents in an opinion in which Judges Van Voorhis and Foster concur.
Judgment affirmed.