Samuel H. Hoestadteb, J.
In this proceeding brought under article 78 of the Civil Practice Act, the petitioner (Pinelawn), a membership corporation, which owns and operates a nonsectarian cemetery in Suffolk County, New York, known as Pine- *655 lawn Memorial Park, challenges an order and determination of the Cemetery Board in the Division of Cemeteries in the Department of State of the State of New York (referred to as the Cemetery Board or the Board), substantially disallowing increases in various service charges sought to be established by Pinelawn.
The charges in question are governed by section 82 of the Membership Corporations Law. The statute (subd. 1) provides that the directors of a cemetery corporation shall fix “ reasonable charges ’ ’ for acts and services rendered by the corporation on the order of a lot owner. It prescribes: “In determining said charges the directors shall consider the propriety and the fair and reasonable cost and expense of rendering the services or performing the work for which such charges are made. ” The charges fixed by the directors are to be filed with the Cemetery Board which within six months after the filing shall make an order approving, disapproving or amending the charges in whole or in part. The Board shall notify the directors of the action taken and the reasons therefor. Subdivision 3 specifically directs: “ In making its determination as to the schedule of charges the cemetery board shall consider the propriety and the fair and reasonable cost and expense of rendering the services or performing the work for which such charges are made.5 5 Subdivisions 6 and 7 prescribe a like procedure for amendments or additions to the original charges, which may not become effective unless and until an order approving them is made by the Board and filed in the same manner as that applicable to the original filing. Effective charges may be amended, modified or vacated by the Board at any time which shall notify the directors of its action and its reasons therefor. Again in subdivision 7 it is directed that in amending, modifying or vacating any charge: ‘1 the cemetery board shall be guided by the standards set forth in subdivision three hereof ”.
On February 24,1960 Pinelawn filed with the Board a schedule of proposed new service charges. The charges so proposed for interments, sodding and seeding graves, building concrete foundations and bronze markers — the ones with which we are here mainly concerned — were substantially higher than those then in effect, Pinelawn last having with the Board’s approval increased its charges in 1956. This February 24, 1960 application contained a detailed statement of Pinelawn’s finances and operations and of the reasons which it believed necessitated the proposed increase in its service charges and stressed particularly, with supporting figures, the increased cost, especially in labor, of the services. On February 6,1961, the Board made an *656 order which stated in general terms that it had completed a review of Pinelawn’s operations and finances and that, based thereon, “it has been determined that some of the proposed rate increases, especially in regard to the interment and bronze marker categories, are deemed to be excessive and therefore, unreasonable. However, it is the opinion of the Board that partial additional revenue is warranted and therefore some of the increases in the service rates should be allowed, but not to the extent requested.” No further exposition of the reasons for the Board’s modification of the proposed increases appears in its order. It is this order of February 6, 1961 which is under attack in the present proceeding.
There is grave doubt whether the order complies with the statutory direction that the Board notify the directors of the reasons for its action. Inasmuch, however, as the order must be annulled on a more basic ground, it is not necessary to pronounce it invalid for lack of a sufficient statement of the reasons for the action taken.
Pinelawn’s application of February 24, 1960 was processed by a senior accountant of the Board who under date of August 30, 1960, submitted a full written report or memorandum addressed to its associate accountant, in which increases in the service charges, though smaller than those proposed by Pine-lawn, were recommended. On November 16, 1960 the associate accountant sent to the Board’s director a memorandum in which he reviewed the August 30, 1960 report; the associate accountant advocated still further reduction of the requested increases. The director indorsed at the foot of this review memorandum his approval “ subject to the reductions which are set forth in the order and the charges approved in the February 6, 1961 order are, indeed, in most instances lower than those recommended in the senior accountant’s memorandum of August 30, 1960.
It has been stipulated that in signing the February 6, 1961 order, the only information relied on or supplied to the members of the Cemetery Board was the order itself, the senior accountant’s memorandum of August 30, 1960 and the review memorandum of November 16, 1960 and the director’s indorsement thereon already mentioned.
As already stated, section 82 of the Membership Corporations Law imposes on the Board the duty, in making its determination as to the schedule of charges, to consider “ the fair and reasonable cost and expense of rendering the services or performing the work for which such charges are made ”. Neither the August 30 memorandum nor the November 16, 1960 review *657 memorandum, contains an analysis of the cost of the services or any other indication that such cost was taken into account in formulating the recommendations made. Since the members of the Board had nothing else before them, they obviously must have acted without knowledge or information regarding the cost. The absence of knowledge or information on the subject is, moreover, not a matter of mere inference. We have the direct testimony of the senior accountant who processed the application that his recommendations were based on ‘6 the overall needs of the cemetery” and that, because of his belief that Pinelawn did not maintain a cost accounting system, he made no attempt to ascertain the cost of the services. His belief was founded on an incorrect assumption, for there is uncontradicted testimony, which I credit, that a cost analysis appeared on Pine-lawn’s time and motion studies and in its books of account. Some of the labor cost records were maintained on the instructions of the Cemetery Board. This material, which would have thrown direct light on the merit of the application for increased charges, was available to the Board. Yet, its senior accountant, whose report is in large measure the source of the challenged order, refused to pursue this avenue of inquiry; by his own testimony he evinced a complete disinterest in cost. The Board simply did not concern itself with that phase of the problem. There was thus an utter disregard of the statutory mandate that the Board consider the fair and reasonable cost and expense of the service. Self-evidently a determination so reached cannot withstand judicial scrutiny and must be annulled (Matter of Gross v. New York City Alcoholic Beverage Control Bd., 7 N Y 2d 531; Matter of Bologno v. O’Connell, 7 N Y 2d 155; Matter of Swalbach v. State Liq. Auth., 7 N Y 2d 518).
The court has not overlooked Matter of Maple Grove Cemetery Assn. v. Curran (285 App. Div. 802, motion for leave to appeal denied 285 App. Div. 929, motion for leave to appeal denied 308 N. Y. 1054). Matter of Maple Grove may have held that the cemetery’s over-all financial operations are pertinent in the ascertainment of the reasonableness of service charges — even this is not entirely clear; it certainly did not rule that the over-all picture is the sole and controlling factor, to the exclusion of the standards prescribed by the Membership Corporations Law. Here, the Board considered solely the other elements which, however pertinent, certainly cannot justify the failure to pay any heed whatever to the statutory standard.
This court recognizes that government cannot be conducted efficiently today without resort to administrative agencies and that these agencies have thus become an essential, if not indis *658 pensable, instrument of government. If, however, these agencies are to serve their intended purpose and command public respect it is imperative that they keep within the area and discharge their functions within the limitations imposed by the law of their creation. An administrative agency seeks in vain judicial shelter from the consequences of action taken beyond the sphere of its prescribed competence. No claim of administrative discretion can then avail and the court must nullify anything done beyond the domain to which the law has confined it. The integrity of the administrative process is preserved when administrative boards and officers are held to the observance of these principles. The Board here transcended them when it failed to give ear to the statutory command that it consider the cost of the service.
In any case, if the proceeds from land sales may be taken into account at all, only that portion of those proceeds which the petitioner receives in its own right may be considered. The part which it holds as agent or trustee for the shareholders (Tyndall v. Pinelawn Cemetery, 198 N. Y. 217; Reese v. Pinelawn Cemetery, 243 App. Div. 165) should be excluded. The amount which must by statute be deposited in the permanent and current maintenance funds (Membership Corporations Law, § 86-a, subds. 2, 3) is likewise to be excluded in conformity with the formula laid down in Grove Hill Realty Co. v. Ferncliff Cemetery Assn. (7 N Y 2d 403).
The annulment of the Board’s order on the ground stated renders it unnecessary to pass definitively on Pinelawn’s further contention that the determination discriminates unlawfully against it, in imposing on it charges less than those permitted to like cemeteries in the same area whose costs are comparable. The evidence at least suggests that this complaint may not be without merit. On the remand to be ordered the Board should be mindful of this pitfall. (See Matter of Victory Holding Corp. v. Herman, 13 A D 2d 918; Matter of Dresher [Lubin], 286 App. Div. 591, 594; Matter of Fitzgerald v. State Division of Dept. of Public Serv., 262 App. Div. 393.)
Pinelawn urges also that the Board is without power to administer the prices of plaques; it argues that these are items of merchandise sold by Pinelawn and that the statute does not empower the Board to regulate the price of merchandise. The court rejects this contention, for the record establishes that the plaques or bronze markers are not sold as merchandise, but are part of and incident to Pinelawn’s service of providing and installing memorials, including the setting of the foundation. *659 They are inseparable from the service which is a unit. The charge for this service is clearly subject to the Board’s control.
In annulling the order the court remits the matter to the Board for further action in accordance with the present determination. Pinelawn asks for a direction that the Board make a new order within 10 days. This is too short a period. Inasmuch, however, as the order of February 6, 1961 was not made until almost a year after Pinelawn applied for its increases and any order made operates prospectively only, the Board should act on the remand with reasonable promptitude. The trial supplemented the data which the Board already had; in the circumstances, the Board should be able to make a new determination and order within 30 days after service of a copy of the order hereon and the same will so direct. The new order shall, in conformity with the statute, state the reasons for the Board’s action.
The court denies the respondents’ motions to strike Exhibits 13-A, B, O and D, 14, 15, 16, 16-A and 17; it grants the motion to strike Locke’s testimony on page 21, with appropriate exception in each instance to the party adversely affected by the ruling. The exhibits received tend to illumine the case and, in any event, are not prejudicial.
In conclusion the court expresses its warm thanks and appreciation to Milton Pollack, Esq., and to Herbert J. Wallenstein, Esq., Assistant Attorney-General, counsel respectively for the petitioner and the respondents for their cordial co-operation in substantially shortening a trial which might well have been protracted. Their conduct throughout the trial and their comprehensive briefs have greatly facilitated the court in its labors.