SIDNEY DIAMANT, Respondent, v. MOUNT PLEASANT WESTCHESTER CEMETERY CORPORATION, Respondent, et al., Defendant, and CEMETERY BOARD, Appellant.

Second Department, May 9, 1960.

*Louis J. Lefkowitz, Attorney-General (Irving L. Rollins, Paxton Blair* and *Julius L. Sackman* of counsel), for appellant.

*Oscar Englander* for Sidney Diamant, respondent.

*Herbert A. Mossler* for Mount Pleasant Westchester Cemetery Corporation, respondent.

PETTE, J. The action was begun on December 13, 1954 (1) for a judgment declaring the rights of the plaintiff-respondent with respect to certain property rights owned by him in the "Diamant Section" of the cemetery of the Mount Pleasant Westchester Cemetery Corporation (hereinafter referred to as the Cemetery Corporation), and (2) for a mandatory injunction compelling the Cemetery Corporation to develop said section at its own expense. The Cemetery Board, appellant herein, is a party to the action in order to protect the public interest, as provided by section 108-a of the Membership Corporations Law.

The issues were referred to an Official Referee to hear and determine, upon the written consent of all the parties. After trial, a judgment was entered upon the decision of the Official Referee (a) declaring (1) that the rights of the plaintiff-respondent to sell and convey burial rights owned by him in the "Diamant Section" of Mount Pleasant Cemetery as such rights existed prior to the enactment of section 85 of the Membership Corporations Law by section 14 of chapter 533 of the

Laws of 1949, have not been and are not denied, limited or restricted by the said enactment, (2) that the said rights of plaintiff-respondent are subject to section 86-a of the Membership Corporations Law as enacted by section 16 of chapter 533 of the Laws of 1949, requiring him, at the time of each sale or conveyance, to pay to the Cemetery Corporation not less than 25% of the gross proceeds thereof as deposits into its maintenance funds, (3) that the Cemetery Corporation has the sole right to make and amend maps of the "Diamant Section" and that a certain map thereof filed in the County Clerk's office, Westchester County, on or about November 15, 1950 is a nullity, (4) that the Cemetery Corporation is not obligated to develop the "Diamant Section" at its own expense and (5) that sections 10 and 11 of article IV of the Rules and Regulations of the Cemetery Corporation are reasonable, valid and enforcible, and binding on the plaintiff-respondent, and (b) denying all other relief demanded in the complaint. The Official Referee held that the change in section 85 and the enactment of section 86-a of the Membership Corporations Law, which were effected by sections 14 and 16 of chapter 533 of the Laws of 1949, are "constitutional under the police power of this State", but that the provisions in question are *prospective* in their application.

The facts are undisputed.

The Cemetery Corporation was organized under the Membership Corporations Law and in 1929 accepted a deed of the entire cemetery, which had been established in 1899. The Cemetery Corporation and its predecessor developed certain sections of the cemetery to fit them for use for burials and sold burial rights therein; other sections were sold, undeveloped and in their natural state, to various purchasers, including Abraham Diamant, the father of, and predecessor in title to, the plaintiff-respondent, for development and resale, but always subject to the dominant right of the owner of the fee to control, operate and manage the cemetery as required by law and in accordance with reasonable rules and regulations adopted by the grantor, and modifications amendatory thereof.

In 1905 Abraham Diamant obtained a deed affecting approximately three acres of land at the westerly end of the cemetery, whereby the use of the parcel described was given to the grantee therein for interment purposes. Except for a small plot reserved for the personal use of his own family, the parcel is admittedly held for resale purposes as a business venture. From time to time, plaintiff-respondent resold several plots to individuals and societies, and also sold a strip along the westerly side of the parcel to the County of Westchester for parkway purposes.

Abraham Diamant purchased the property in question in 1905 for $6,000 and at the same time obtained an agreement that the parcel was to be free of charges, taxes and assessments. The property was also subject to rules and regulations, attached to the deed, and such other rules and regulations as might be adopted by the grantor. Requests to develop were made, particularly with respect to paths. Finally, about 1930 or 1931, Abraham Diamant constructed some hard-surfaced paths. His total expenses amounted to $4,500. He resold to burial societies large undeveloped areas of the " Diamant Section ", realizing in all approximately $50,000.

In 1945 the Cemetery Corporation adopted certain rules and regulations, among which are two (art. IV, §§ 10, 11) which have been held to be binding on the plaintiff-respondent by the judgment herein. They provide that purchasers shall develop their sections with lawns, drainage, and hard-surfaced walks or paths and shall maintain them in good repair, failing which, the Cemetery Corporation may do so at the purchasers' expense. The judgment herein in part declares that said rules and regulations are valid and are binding on the plaintiff-respondent, and he has not appealed therefrom. The engineer of the Cemetery Corporation has estimated that the cost to plaintiff-respondent of the work contemplated by sections 10 and 11 of article IV would be $28,856.55.

Prior to 1949, purchasers of burial rights in cemetery lots were permitted to resell them " with the consent of the corporation " (Membership Corporations Law, former § 85, prior to repeal by L. 1949, ch. 533, § 14). As a result of an intensive investigation, which had been made by the Attorney-General, and the recommendation of the Governor, the Legislature adopted chapter 533 of the Laws of 1949, extensively revising article IX of the Membership Corporations Law. Section 1 of said chapter 533 reads in part as follows: " The people of this state have a vital interest in the establishment, maintenance and preservation of burial grounds and the proper operation of the corporations which own and manage the same. It is hereby declared that unhealthful, unfair, unjust, destructive, demoralizing and uneconomic practices have been and are now being carried on in the maintenance and operation of cemeteries. To protect the well-being of our citizens, to promote the public welfare and to prevent cemeteries from falling into disrepair and dilapidation and becoming a burden upon the community, and in furtherance of the public policy of this state that cemeteries shall be conducted on a non-profit basis for the mutual benefit of plot owners therein ".

Section 14 of chapter 533 of the Laws of 1949 repealed section 85 of the Membership Corporations Law and enacted a new section 85 under which there are, aside from the public interest represented by the Cemetery Board, only two parties interested in a specific plot or parcel lying in a cemetery — the corporation which owns the fee and the owner of the right of interment. With the exception of religious or membership corporations, or unincorporated associations or societies which provide burial benefits for their members, only the cemetery corporation has the unrestricted power to sell burial rights (Membership Corporations Law, § 85, subd. 1). As to plots or parcels in which there have been no interments, as here, if the owner of the burial rights wishes to dispose of his interest he must offer it to the cemetery corporation at the price paid therefor plus 2% per annum. If, as here, the lot was not purchased by the present owner of the burial rights and he and the cemetery corporation cannot agree upon a price, the Cemetery Board shall fix the price pursuant to a standard set forth in the statute. In either event, if the cemetery corporation refuses to buy within 30 days, the plot or part thereof may then be sold to some other purchaser, but only with the approval of the Cemetery Board. The approval of the Cemetery Board is expressly conditioned upon the parcel's having been previously offered to the cemetery corporation (§ 85, subd. 3). The issue presented on this appeal is whether the subject enactment applies to pre-existing rights, such as plaintiff-respondent's in the " Diamant Section ", or is only prospective in its application.

The circumstances which brought about enactment of the foregoing provisions reveal their intended scope, for it is a well-established principle of statutory construction that any enactment is to be read " in the light of its history and purpose " (*Matter of Frasch,* 245 N. Y. 174, 180). The Attorney-General, in his report to the Governor, stated, with respect to cemeteries, that " far from being operated on a non-profit basis in the interest of the public, a large number — probably larger than is known — have been and continue to be run as lucrative commercial ventures.

" Indeed, they have been cynically developed into devices for profiteering on the widest possible scale. * * *

" Practices are employed or countenanced which work frauds and indignities upon people and have given numerous occasions for valid complaint. * * * bulk sales of plots are made to favored individuals for re-sale at pressure prices ". (N. Y. Legis. Doc. [1949], No. 7, p. 6.)

The Governor, in his message to the Legislature, said "The report [of the Attorney-General] reveals shocking abuses on a widespread scale and of the most serious nature. * * *

"It is clear from the report that for over one hundred years the operation of cemeteries has been recognized as affecting the public interest and of having the status before the law and before the courts of quasi-public utilities. The policy of the State in controlling their operation has never been questioned. The machinery for such regulation and supervision has been, as proven, hopelessly inadequate. The existing statutes have not prevented the public from being cheated, exploited and subjected to indignities in a concern which is perhaps the most pitiful of any suffered by man. To permit these conditions to continue would be intolerable. I am sure that the Legislature will feel as strongly as I do that such conditions should not be permitted to continue * * * I urge favorable action upon the legislation submitted to cure the abuses described." (N. Y. Legis. Doc. [1949], No. 7, p. 3.)

Thus, it is clear that section 85 was intended to put an end to the shocking abuses which were being perpetrated in the practice of making "bulk sales of plots * * * to favored individuals for re-sale at pressure prices", as in the "Diamant Section" herein. With only a small part of his original holdings disposed of, the plaintiff-respondent has already received almost five times the original investment. If permitted to continue the operation, his potential profits would be vast. This would surely be contrary to "the public policy of this state that cemeteries shall be conducted on a non-profit basis". In view of the considerations which led to the enactment, it cannot be imagined that the Legislature intended to allow such sales to continue.

Extended reference to cases cited by the plaintiff-respondent, where statutes were construed prospectively, is unnecessary. None of them involves a situation analogous to that presented here.

A cemetery corporation always has been viewed as a nonprofit association, and such a corporation has been described by the Supreme Court of the United States as being not "a mere land company, for the exclusive benefit of the original associates and their successors holding shares in the stock of the corporation", but, rather, an association so formed "that the ultimate and principal object was to establish and permanently maintain a cemetery for the burial of the dead, which, if not a strictly charitable use, is in some aspects a pious and public use". (*Close* v. *Glenwood Cemetery*, 107 U. S. 466, 474; see, also,

*Commissioner of Internal Revenue* v. *Kensico Cemetery*, 96 F.
2d 594 [C. C. A. 2d].) Cemetery corporations are generally
exempt from land taxes (Tax Law, § 4, subd. 6), franchise taxes
and Federal income taxes (*Commissioner of Internal Revenue*
v. *Kensico Cemetery, supra*). They are statutorily exempt from
taxes and assessments and from levy of executions under judg-
ments (Real Property Law, § 450). As the Attorney-General
said in his report: "It is clear   *   *   *   that they are intended
to be non-profit membership associations with certain privileges
and immunities granted by the State, and devoted to and holding
their property for a public use." (N. Y. Legis. Doc. [1949],
No. 7, pp. 8-9.)

Since the operation of a cemetery is impressed with a public
purpose, any contract with relation to such operation implicitly
includes a clause rendering such contract subject to any changes
which may be made in the law. In *Matter of People* (*Title &
Mtge. Guar. Co.*) (264 N. Y. 69), the Court of Appeals, quoting
HUGHES, Ch. J., in *Home Bldg. & Loan Assn.* v. *Blaisdell* (290
U. S. 398), said (p. 83): "'Not only are existing laws read
into contracts in order to fix obligations as between the parties,
but the reservation of essential attributes of sovereign power
is also read into contracts as a postulate of the legal order.'"
(See, also, *Chicago, B. & Q. R. R. Co.* v. *Nebraska,* 170 U. S. 57.)

It is true that the right to legislate, even under the police
power, is not unlimited (*Manigault* v. *Springs,* 199 U. S. 473;
*Matter of People* [*Title & Mtge. Guar. Co.*], *supra*). However,
it is not argued that the legislation here in question exceeded the
permissible limits. "[T]here is wide discretion on the part
of the legislature in determining what is and what is not neces-
sary — a discretion which courts ordinarily will not interfere
with" (*Manigault* v. *Springs, supra,* pp. 480-481).

Accordingly, the agreement whereby the predecessor of the
plaintiff-respondent purchased the "Diamant Section" from
the predecessor of the Cemetery Corporation implicitly included
a provision rendering the contract subject to any valid changes
thereafter made in the law by an exercise of the police power.
That such enactment herein was a proper exercise of such power
is not questioned by any of the parties, as previously mentioned,
and is amply supported by the authorities (see *Matter of People*
[*Title & Mtge. Guar. Co.*], *supra,* pp. 82-84; *People ex rel.
Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429; *Grove Hill
Realty Co.* v. *Ferncliff Cemetery Assn.,* 7 A D 2d 736, affd. 7
N Y 2d 403; *Keith* v. *Maple Grove Cemetery Assn.,* 208 Misc.
217, 223-224, appeal dismd. 1 A D 2d 665, [1st Dept.]). Since
chapter 533 of the Laws of 1949 was designed to put a stop to

the abuses mentioned, it is clear that the restrictions in the resale of burial rights in cemetery plots set forth in section 85 of the Membership Corporations Law, as enacted by the aforementioned chapter 533 of the Laws of 1949, apply to all burial rights in cemetery lands, whenever acquired.

Since a seller of burial rights is required by that section to offer the property to the cemetery corporation at the price paid therefor, with interest at 2% per annum, it is not to be expected that he should have to pay 25% of the proceeds of such sale into the maintenance funds specified by section 86-a of the Membership Corporations Law. That such payment is required of the cemetery corporation and not the seller of burial rights is apparent from the text of that section.

Finally, notwithstanding that he did not appeal, the plaintiff-respondent asks this court to grant him relief, in the exercise of its power under section 8 of article VI of the New York State Constitution, by invalidating subparagraph " 5 " of the first decretal paragraph of the judgment, which provides that sections 10 and 11 of article IV of the Rules and Regulations of the Cemetery Corporation are binding on him. It will be remembered that the burial rights were originally purchased subject to such rules and regulations as might be adopted, and that sections 10 and 11 provide that owners of burial rights must improve their property at their own expense. The cost to plaintiff-respondent would be about $28,856.55. He claims that this is inequitable, in view of the restrictions imposed on resales. However, he does not have to pay for the improvements — he can avoid that obligation by selling the burial rights to the Cemetery Corporation. The enactment of chapter 533 of the Laws of 1949 was designed to remove private individuals from the business, and we see no basis for entertaining plaintiff-respondent's request.

The judgment should be modified upon the law (1) by striking from subparagraph " 1 " of the first decretal paragraph everything following the words and figure " Laws of 1949 " and by substituting therefor the words " have been and are denied, limited and restricted by said amendment ", and (2) by striking from subparagraph " 2 " of the first decretal paragraph everything following the words " said rights " and by substituting therefor the words and figures " are not subject to Section 86-a of the Membership Corporations Law, as amended by Chapter 533, Section 16, of the Laws of 1949." As so modified, the judgment, insofar as appealed from, should be affirmed, without costs. The findings of fact should be affirmed.

412

Ughetta, Acting P. J., Kleinfeld, Christ and Brennan, JJ., concur.

Judgment modified upon the law (1) by striking from subparagraph "1" of the first decretal paragraph everything following the words and figure "Laws of 1949" and by substituting therefor the words "have been and are denied, limited and restricted by said amendment", and (2) by striking from subparagraph "2" of the first decretal paragraph everything following the words "said rights" and by substituting therefor the words and figures "are not subject to Section 86-a of the Membership Corporations Law, as amended by Chapter 533, Section 16, of the Laws of 1949." As so modified, judgment, insofar as appealed from, affirmed, without costs. The findings of fact are affirmed.