Hon. Alexander F. Treadwell Secretary of State Department of State 41 State Street Albany, New York 12231-0001
Dear Secretary of State Treadwell:
Your counsel has requested an opinion regarding whether a cemetery corporation may sell multiple plots, for the purpose of resale, to membership or religious corporations or unincorporated associations or societies which provide burial benefits for their members [hereinafter collectively referred to as burial societies].
Not-for-Profit Corporation Law § 1513 provides, in pertinent part, as follows:
(a) Conveyance of lots. (1) Except as otherwise provided in this subdivision the right to use any lot, plot or part thereof may be sold or conveyed only by the cemetery corporation. (2) It shall be unlawful for any person, firm or corporation to purchase or for a cemetery corporation to sell a lot, plot or part thereof for the purpose of resale. Thisprovision, however, shall not prohibit the sale to its members of lots,plots or parts thereof, or the right to use any lot, plot or partthereof, by a membership or religious corporation or unincorporatedassociation or society which provides burial benefits for its members. Not-For-Profit Corporation Law § 1513(a)(1) — (2) (emphasis added).
Clearly, the statute permits burial societies to sell plots to their members. The question raised is whether this language authorizes burial societies to purchase multiple plots for resale to their members or only permits burial societies to sell plots acquired prior to the effective date of the statute.
One interpretation, which we ultimately reject, is that the statutory language in issue was intended to operate as a grandfather clause, only permitting burial societies to sell to their members plots that were acquired prior to the effective date of the statute in 1949. L 1949, Ch 533. However, neither the statutory language nor the legislative history reflects that intent. If the Legislature intended to limit the sale of plots by burial societies to those that were acquired prior to the statute's effective date, presumably it would have added language to that effect. Typically, explicit language is used by the Legislature to create grandfather clauses. See, e.g., Environmental Conservation Law §23-1301(3) ("Subdivisions 1 and 2 of this section shall not apply to underground storage reservoirs or the storage of gas therein provided that such reservoirs had been placed in operation prior to October 1, 1963 and as long as such operation is not abandoned"); Navigation Law § 91-b(2) ("Upon the taking effect of this chapter, all pilots who are then, and have been for the two years immediately prior thereto, actively engaged, as a regular occupation, in piloting seagoing vessels through the waters specified in this chapter shall, upon application, be licensed as full branch Long Island-Block Island Sound pilots for the waters covered by this chapter if found by the commissioners to be qualified in accordance with their regulations in effect on March seventeenth, nineteen hundred seventy-one, except that any person who is found to be so qualified who has reached his sixtieth birthday prior to the effective date of this act shall be eligible to renew his license until age seventy"). Regarding burial societies, if the Legislature had intended to create a grandfather clause, permitting burial societies to sell only those plots acquired prior to the effective date of the statute, it would have been easy for it to have added language to that effect, e.g., "plots acquired prior to the effective date of this statute."
Absent such language, and without any legislative history indicating that a grandfather clause was intended, in our view the statute has only one conceivable meaning. By allowing burial societies to sell plots to their members, the Legislature created an exception to the prohibition against the purchase of plots for the purpose of resale. It was unnecessary for the Legislature also to except specifically the purchase of plots by burial societies from the prohibition. By its terms, the statute excepts a "membership or religious corporation or unincorporated association or society which provides burial benefits for its members" (emphasis added). As a corporate or association purpose, these entities sell plots to their members. The plain language of the statute is intended to allow these entities to continue performing this purpose through acquisition of plots. See, Percival E. Jackson, The Law of Cadavers, at 531 n 103 (2d ed 1950) (noting that the "evident intent of this ambiguous subdivision" is to provide a complete exception for burial societies).[1]
This interpretation is consistent with the legislative history. In 1949, the Attorney General issued a report to the Governor on the nature and operation of cemeteries throughout the State. Legislative Document, No. 7, Report on the Investigation into the Operation of Cemeteries (Feb 11, 1949) [hereinafter Report]. In this report, the Attorney General noted that although public cemetery corporations were supposed to operate on a non-profit basis, many were "run as lucrative commercial ventures. Indeed, they have been cynically developed into devices for profiteering on the widest possible scale." Report, supra, at 6.
There is shameful neglect of grounds; rates and charges are geared forextravagant profit without relation to cost; trust moneys are diverted;unconscionable commissions are paid to boost sales; middle-men are given free reign to mark-up prices; tie-in schemes link cemetery and monument dealer; controls are perpetuated and handed down in families from generation to generation like heirlooms; bulk sales of plots are made tofavored individuals for re-sale at pressure prices; plot owners are subjected to arrogant treatment by officers and trustees; supervision of care is peddled on a concession basis to the highest bidder; and, inevitably, certificates of indebtedness, which are in effect mortgages on cemeteries, are sold and traded by speculators. Report, supra, at 6 (emphasis added).
Based on this report, it is clear that the legislation proposed by the Attorney General, and enacted by the Legislature, was intended to put an end to the operation of cemeteries as lucrative commercial ventures, specifically, the sale of plots at extravagant prices without relation to cost and the bulk sale of plots to favored individuals for resale at pressure prices. See, Diamant v. Mount Pleasant Westchester CemeteryCorp., 10 A.D.2d 404, 409 (2d Dept 1960). Additionally, "[t]he enactment . . . was designed to remove private individuals from the business. . . ." Id., at 411.
In contrast, burial societies are formed for the purpose of ensuring that persons with common bonds can be buried together. Burial societies "acquire burial rights in gross in established cemeteries where they segregate and separately maintain sections thereof for the burial and more intimate segregation of the dead of their members." Jackson, The Lawof Cadavers, supra, at 286. If burial societies are prohibited from purchasing plots for resale to their members, they can no longer carry out this central purpose. Neither the statutory language nor the Attorney General's report suggests any intent to prohibit the continued operation of burial societies, including their ability to purchase plots for their members.
The Attorney General's report specifically noted that the proposed legislation regulating cemeteries would not apply to "cemeteries belonging to or operated by religious corporations [see, Not-For-Profit Corporation Law § 1503] . . . since it is patent that moneys paid by the public to these are never diverted to private gain." Report, supra, at 8. Additionally, in his message to the Legislature, the Governor noted that cemeteries operated by religious organizations "have not been diverted to the extortionate and exorbitant gain of private individuals." Legislative Document, No. 7, Governor's Message to the Legislature (Feb 14, 1949). Similarly, burial societies operate for the benefit of their members and provide burial services only to their members. Indeed, the provision under review relating to resale includes within its exception "religious corporations" and other burial societies. Not-For-Profit Corporation Law § 1513(a)(2). Accordingly, because burial societies operate for the benefit of their members, we believe that the statute should be construed to except completely burial societies from the prohibition against the purchase of lots for the purpose of resale. The intent, in our view, was to allow burial societies to continue fulfilling this central purpose for their members.
Moreover, since the enactment of this statute in 1949, burial societies have continued to exist and carry out their institutional purpose. If the Legislature's intent was to create a grandfather clause, it could have clarified the statute during this lengthy time period and limited the sale of plots by burial societies to those that were purchased prior to the effective date of the statute.
Therefore, in our opinion, a cemetery corporation may sell multiple plots to burial societies for the purpose of resale to their members.[2]
Very truly yours,
DENNIS C. VACCO
Attorney General
[1] The Appellate Division in Diamant v. Mount Pleasant WestchesterCemetery Corp., 10 A.D.2d 404, 408 (2d Dept 1960), held that the resale restrictions in the predecessor of the current statute were not only prospective. The court prefaced its analysis with a discussion of the legislative history and central provisions of section 85(1) and (2) of the Membership Corporations Law (predecessor of Not-For-Profit Corporation Law § 1513[a][1] and [2]). Under section 85:
[T]here are, aside from the public interest represented by the Cemetery Board, only two parties interested in a specific plot or parcel lying in a cemetery — the corporation which owns the fee and the owner of the right of interment. With the exception of religious or membership corporations, or unincorporated associations or societies which provide burial benefits for their members, only the cemetery corporation has the unrestricted power to sell burial rights.
The legislative history indicates that the purpose of this and other provisions of the statute was to further the public policy that cemeteries "be conducted on a non-profit basis for the mutual benefit of plot owners therein." Id.
[2] Please note that we do not address the rate at which burial societies may resell such plots to their members. Burial societies should contact the State Cemetery Board for guidance on this issue.